Good morning, Your Honours, and may it please the Court. My name is Richard Berman. I am arguing today on behalf of Appellant Sami Chemicals and Extracts, Ltd. And this appeal involves two fundamental issues. One of claim interpretation and the related patentability issues on that. And the second is fundamental fairness and the ability of an applicant to pursue his desired scope of protection. So on the first issue of claim interpretation, the central question is, does the term promoting mean increasing? And in claim one, which is the only independent claim on appeal, the claim is directed to a method of promoting lean body mass in a human individual in need thereof by administering a lean body mass promoting effective amount of a compound known as 4-Scolin, which is typically extracted from a plant called Coleus 4-Scoli. Well, the references describe weight loss and lipid-lowering fat metabolism. And so doesn't that inherently describe what the claims do? Actually, it's just the opposite. One of the issues on this appeal that has become confused, I believe, as far as the appellee is concerned, is we're prosecuting two sets of claims through re-examination. We're pursuing one set of claims directed to increasing lean body mass. That is the claim that is under appeal. A second set of claims, which was the independent claim was claim five, was directed to a method of shifting the proportion of lean body mass and fat tissue towards lean body mass. Now in retrospect, in the appeal before the board, it was made abundantly clear to applicants that claim five could, in its broadest interpretation, read on weight loss. Therefore, appellant has decided during this appeal to drop the claims directed to that subject matter. And we are now pursuing claims solely directed to an increase in lean body mass. But if it's so critical to patentability that increase be understood, why not just change promoting to increase and settle this debate with the patent office? Your Honor, we would be more than pleased to do so. But our petitions to do exactly that have been denied by the patent office. We might have to refile or whatever. But isn't that more likely to succeed than this entire appellate process? Your Honor, I believe that is the case. And we would favor, and that is the second point of the argument, which is the fundamental fairness argument, we would strongly favor a remand of this case back to the patent office so that we could make the appropriate amendment and change promoting to increasing if indeed that is the way that this court decides the interpretation of that claim should lie. If Your Honors interpret promoting to be different than and more than increasing, then we would welcome the opportunity to amend the claims to the proper scope. But I guess I'm not even sure that that issue is before us. It would have seemed to me that that might have been resolved while it was still in the office. As I mentioned, we had petitioned. The petitions were denied. We now, in the second set of our brief, we do address the fact that we believe the board's decision was a new ground of rejection. And therefore, we are entitled to a reopening of prosecution in order to make the exact amendment that you're referencing. Was that requested as a new ground? We have asserted it was a new ground. The patent office denies that it's a new ground. We had a rehearing at the board on that very issue. The rehearing was denied on that issue. So that is one of the issues we are here before you today. So Mr. Berman, even if we affirm the patent office's actions, wouldn't you still have the opportunity to come back with a new application at that point, a continuation application? Unfortunately, we would not. Because we are under reexamination and there is no procedure whereby we could refile. There is no continued reexamination. And again, we petitioned the board for what's called an RCR, a request for continued reexamination. And that petition was denied. Your Honor, we have tried within the patent office to use all available means to resolve this very issue and save these judicial resources. But the board, the patent office and the board and the solicitor's office have stymied our attempts. Mr. Berman, you put yourself in the position of the victim having been dealt with unfairly. But this is awfully close prior up. I mean, Foskalen is in these references dealing with weight loss, getting rid of lipids, lowering lipids. And it's not a big leap either in terms of inherency or obviousness to reject those claims. Your Honor, I believe there's two issues with regard to what you say. And it is duly noted. And I do agree that the prior art is close. However, there are many reasons why this invention is patentable over those references. First off, in initial examination prior to the patent being granted, the issue of lipolysis for Foskalen being known as a lipolysis agent was very well known. It's in the background of our invention. That issue was before the examiner initially. So the mere fact that this is known as a lipolysis agent was not seen as refuting patentability initially. Now, on re-exam, there are other pieces of prior art, such as the Kazuo and Greenway references that are currently at play. Those references all deal, first off, none of them mention increasing lean body mass at full stop. So there cannot be, in any way that you stretch that reference, a- But you don't really know if that result is inherent or not? I believe- I'm sorry to interrupt. I believe that we do know that because in Kazuo, for example, the subjects lost weight.  And in Greenway, where it was a localized application on thighs, the thigh girth was measured and the thigh girth was reduced, which would, while not definitive, it would certainly argue that there was a weight loss within the thigh area, certainly. And I don't know how you can get from weight loss generally in Kazuo and reduction of thigh girth in Greenway to our claim, which is a method of increasing lean body- Were the dosages of forscolin different? Yes, radically. The amount of forscolin administered in both the Greenway and Kazuo references were significantly less, on the order of 10 times less than what we exemplify as a preferred embodiment in our claims. And the dosages are in the claim, not in claim one? No, the dosages are not, but we did present declaration evidence during prosecution as to- there is a length of time. This is an herbal supplement. And so with most herbal supplements, as opposed to prescription drugs, there is a length of time that one must take this before you see the effects that happen. That's true of some prescription drugs, too. That may be the case, yes. But certainly with this product, from the clinical studies that have been conducted, you're looking at really about four weeks, maybe six weeks, something in that range, for this to work. And these tests that were being conducted in Kazuo and Greenway, first off, Kazuo was, I believe, two weeks, very short period of time, relatively speaking. And the dose that was being administered in Kazuo, when you mathematically see what the dose was, it was a very low dose. If I don't miss my guess, Patton Office is now going to tell us that all these limitations you're talking about aren't in the claims. Well, but they are exemplified. And the fact that we require in the claim an effective amount to achieve this purpose, I believe, sets a floor on which, if you are providing under the effective amount, even if you're doing it accidentally, in which case, the Kazuo and Greenway, I believe what you're referencing to would be what we colloquially would call accidental anticipation. That cannot be the case here, because the dosages are so low and the time that it was administered was so insufficient that there is no way that it could have achieved the invention. But again, to reinforce what Judge Lurie's comment, none of that is in the claim. And it's really hard to see the difference between this broadly stated claim and the prior art. You've argued these differences, but they don't limit your claim. I actually believe they are firmly within the claim. The claim requires a lean body mass promoting effective amount. Now, if I could be so bold as to substitute the term increasing, a lean body mass increasing effective amount. So an effective amount to increase lean body mass. And so if someone administers a larger amount, as in the prior art, as what you say is in the prior art, that would include this, would it not? It was a lesser amount that was administered in the prior art, a grossly reduced amount as compared to what would be necessary. But still, well, let's hear from the patent office on this. While you're sitting, I think you should take a look at page A380 of your appendix, specifically a line that says, by maintaining or increasing the lean body mass while reducing body fat. Now, is that a maintenance? Is that a provision? Is that what you're trying to establish? Because maintaining or increasing is what? Understood. Promoting? No, I believe that is the Claim 5 matter. In Claim 5, it was a method of shifting the proportion of lean body mass from adipose tissue in favor of lean body mass. So you could, by shifting the proportion, you could maintain the amount of lean body mass and reduce fat. Or you could increase lean body mass and maintain the fat, and you would shift this proportion. But as I stated, that claim is no longer under appeal. And so I believe all of the explanations in the spec directed to that piece of the invention are no longer relevant to the case. All right. Thank you. Let's hear from the office. Ms. Lynch. Good morning. May it please the Court, substantial evidence supports the Board's findings and conclusions that Kizuo and Greenway both anticipate Representative Claim 1, and Kizuo also renders it obvious. Don't the references all talk about lowering weight and lowering fat content rather than building up lean body mass? That's correct. Kizuo talks about preventing fat accumulation, and Greenway talks about fat reduction. So it's not anticipation? It is anticipation, Your Honor, because as the Board correctly construed the claim, according to its broadest reasonable construction, it included the construction that promoting is maintaining lean body mass, or it can be shifting the proportion in favor of lean body mass. But that's interesting. If on reexamination the claims are viewed not the way they would be viewed if they were out by the public, but as they're viewed in the initial examination, and this applicant says that they were not permitted to narrow the claims in order to avoid this new argument, that they're so broad that promoting includes increasing? I don't think that this is a new argument, Your Honor. I think if you look through the prosecution history, the examiner was using the same construction, although not explicitly saying it. By continuing to reject these claims over Kizuo and Greenway, clearly the examiner was that reducing body fat or not accumulating body fat was enough to meet this claim. The claims were initially allowed. The patent was out there on whatever broadest reasonable construction the examiner saw. Correct. Now we go back into reexamination for whatever reason, and the office says, no, promoting includes these other things. And the applicant says, no, I'm interested only in increasing, and he tells us that the declined to permit that change in the claims in order to distinguish. That's what that protocol is about. The broadest reasonable construction is used to allow the applicant to redefine and restrict, yet he says he wasn't permitted to. Because the first time that the applicant raised this was after the board's decision, and at that point, the office doesn't allow an RCE for reexamination. The first time, you mean at what stage? After the board decision, then Sammy tried to move. They petitioned to see if they could continue examination and amend their claims to change promoting to increasing. And at that point, it's too late. Maybe he didn't know that it was getting an undue, in his view, interpretation until the board told him so. But I believe that he should have known if he didn't know. And I think if you look at the prosecution history, we can see that Sammy argued those two claims together. They argued claim one, which had the promoting language, and claim five, which had the shifting language. They argued them together. The examiner rejected them together. And the examiner was very clear that she was finding that reducing body fat was inherently meeting that claim. She wasn't saying, I see increasing lean body mass. So I think it's clear that Sammy shouldn't have been surprised if they were surprised. But doesn't it make real common sense that if you reduce body fat, you would increase the lean body mass? I mean, it's one versus the other, isn't it? For the most part? Right. And that's what it was saying, that the way forceful and works is it increases cyclic AMP, which reduces fat. So it increases body mass. Well, Sammy says in its own specification that that is what they think is happening. Increases the ratio. But if you use fat, that doesn't build muscle unless you do something else. Isn't that correct? I mean, I think forceful and is what Kazuo says is it's getting rid of fat. So that is inherently shifting the proportion, as he says. Doesn't say ratio. No, it doesn't say ratio. I don't think it is. But that was the examiner's rejection, that by reducing fat, that could reasonably be read to mean that you would change the proportion. And Sammy actually agrees with that because they've dropped claim five. Are we talking about claim construction here, to which we owe no formal deference? Are we talking about interpretation of what the references disclose, where we do owe substantial evidence deference? What the references disclose is the substantial evidence. And your review of the board's claim construction is whether it was a reasonable interpretation. And I think if you look at Sammy's specification, you will see that they keep talking about maintaining or increasing lean body mass. And then elsewhere, interestingly, they talk about promoting lean body mass. Your view is the references don't expressly disclose increasing body mass or even maintaining it, but simply lowering fat. Correct. But lowering fat could mean lowering all weight, probably more often than not does. And doesn't necessarily mean increasing muscle tissue. But there's no indication. What Kizuo says is it selectively lowers fat. So that's an indication that the lean body mass is maintaining and or increasing because it's selectively reducing fat. But I just want to say... Are you saying that's in there? I thought all the references taught was that it reduces fat. It does say that it reduces fat, but it also says, I believe, selectively reduces fat, selectively causes lipid metabolism. Well, how is that promoting lean body mass? Well, inherently, it's promoting lean body mass. Well, Kizuo... Relatively speaking. Right. Because it's changing the proportion. Your lower B and A is maintained. Right. As Sammy admits. And Kizuo also teaches that it increases cyclic A and B. So I just want to say one of their arguments is that in their specification, they were using promoting to mean only increasing. And if you look at their specification, you can see that that's not correct. They always talk about maintaining or increasing. They never say maintaining or promoting. And they never disavow or say... They never tell us that it means only increasing. Well, but was there a rejection under 112? There was a rejection under 112, but not for these claims. Not for claim one. Well, but that's really what you're arguing, isn't it, that the claims are inadequately specific? They don't particularly point out and distinctly claim the applicant's invention as in 112? No. What I'm trying to say is that, you know, Sammy's argument now that promoting should be limited to increasing is not something that's supported by the specification or supported by Sammy's argument. Section 112. But I don't... You say there was a rejection on that ground? No, there wasn't a 112 rejection for claim one. All I'm trying to say is that... That's what you're telling us, is it doesn't comply with that provision. No, the board gave it the broadest reasonable construction, and that includes more than increasing. And all I'm saying is that it's consistent with their specification. What I'm hearing is it isn't an earth-shattering invention, and yet the references aren't all that. They're not knockouts. I think they are knockouts, Your Honor. And I think by Sammy's counsel saying that they've dropped claim five, which we think has the same scope as claim one, they've admitted that it's a knockout. If you agree that claim one has a similar scope to claim five. Bezuo says phosphorine extract has the function of preventing the increase of body weight and improving lipid metabolism. That doesn't sound like building up any muscle tissue. It just prevents human body weight increase. But as Sammy's counsel has said, that falls in the changing the proportions. And if you look at Greenway, it's even clearer on that point, because Greenway actually got rid of fat on the thigh, and so... It doesn't say preventing body weight decrease, does it? Which reference? Well, Caswell, if you're lowering fat and preventing body weight increase, that doesn't mean you're maintaining body weight by increasing muscle tissue, does it? Lead mass. Well, again, I think you're changing the proportion. In Bezuo, they were allowed to take in nutrients freely. So they're taking in all of these calories, and then they're selectively getting rid of fat. So you are changing the proportion, because normally that would turn into fat. Well, that's the whole issue, isn't it? Changing the proportions themselves between body fat and lean. Correct, Your Honor. If you change one, you're going to change the other. Correct, Your Honor. And the weight. As KSR would say, that's common sense. Correct, Your Honor. So, are there no further questions? Any more questions? Any more questions? Okay. Mr. Berman? Thank you, Your Honor. I think what we've just heard really solidifies my discussion on that these claims have been read completely nonsensically by the appellee at this point. The appellee, interestingly enough, has now taken the position that Claim 1 is of the same scope as Claim 5. That was literally what was said. I don't understand how one can conflate two independent claims, one which is directed to shifting the proportion of lean body mass. Doesn't say that. Claim 5 does, which is no longer under appeal. And Claim 1, which is a method of promoting lean body mass. I do not understand how the appellee can have the reasonable position that those claims mean exactly the same thing. They clearly do not. And that is the characterization that is used throughout the appellee's brief. They conflate two claims, two completely independent claims that are independent inventions. And they use the arguments that we put forth and the pieces of the specification that are directed to Claim 5, which is no longer under appeal, as a rationale for why Claim 1, which is of wholly different scope, should be rejected. Or the rejection should be upheld. And I know that that's not the law. And the other interesting issue is they seem to be enamored with the fact that we argued these rejections together. How we argued them together is by saying, this reference or that reference, Cazuel or Greenway, neither discloses the promotion of lean body mass, nor shifting the proportion of lean body mass and adipose tissue in favor of lean body mass. In other words, arguing Claim 1 or and Claim 5. Yes, we argued them in the same sentence. But all it was doing was saying that the reference neither disclosed A or B. Now, as we said, in retrospect, we now have dropped Claim 5 and its dependence because we agree that under the broadest reasonable interpretation, Cazuel and Greenway could be considered to read on that broad invention. But that being that we dropped that set of claims, that disappears from consideration here. And we really need to focus on Claim 1. And the office is trying to confuse the issue by reeling in discussions and arguments on Claim 5. Any questions for Mr. Burman? Thank you. Thank you, Mr. Burman and Ms. Lynch. The case is taken under submission.